United States District Court
District of Massachusetts

| | |
|---|---|
| Boston Taxi Owners Association, Inc. and Steven Goldberg<br><br>Plaintiffs,<br><br>v.<br><br>Governor Charles Baker, Angela M. O'Connor, Jolette A. Westbrook, Robert Hayden, Stephanie Pollack, Thomas P. Glynn and David M. Gibbons<br><br>Defendants. | Civil Action No.<br>16-11922-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises out of a purported dispute between taxicab medallion owners, Boston Taxi Owners Association, Inc. and Stephen Goldberg ("plaintiffs"), and Massachusetts Governor Charles Baker and six other defendants who represent the Commonwealth of Massachusetts, the Massachusetts Port Authority and the Massachusetts Convention Center Authority. Plaintiff's complaint about the Commonwealth's decision to apply a regulatory scheme to transportation network companies ("TNCs") different from that applied to taxicabs by several municipalities.

Plaintiff filed a motion for a preliminary injunction in November, 2016, and defendants separately moved to dismiss the

-1-

case for failure to state a claim. For the following reasons, plaintiff's motion for a preliminary injunction will be denied and defendants' separate motions to dismiss will be allowed.

## I. Background

### A. Local Regulation of the Taxi Industry

The primary sources of regulation for the taxicab industry are the municipalities which are authorized by M.G.L. c. 40, § 22 to regulate local taxi businesses. As a result, taxis are subject to a variety of regulatory schemes.

In the City of Boston specifically, the Police Commissioner ("the Commissioner") exercises that regulatory authority. The Commissioner requires anyone who drives or is "in charge of" a "hackney carriage" (i.e. taxicab) to possess a license known as a "taxicab medallion."

In 2008, the Commissioner issued a comprehensive set of taxicab regulations under Boston Police Department Rule 403 ("Rule 403"). Rule 403 defines a taxicab as

> [a] vehicle used or designed to be used for the
> conveyance of persons for hire from place to place
> within the City of Boston.

Since its inception, Rule 403 has not been applied to livery vehicles, despite the fact that the rule's broad definition of a taxicab would seem to encompass them.

The rule requires all taxicab operators, <u>inter alia</u>, to possess a medallion, maintain a properly equipped and

functioning taxicab, display a hackney carriage license at all times, refrain from cell phone use while operating a taxicab and belong to an approved dispatch service or "radio association." Rule 403 also sets out the approved manner in which a taxicab in the City can engage customers.

Beginning in 2012, transportation network companies such as Uber, Lyft and Sidecar began operations in Boston and surrounding communities. The cellular phone, app-based, for-hire transportation services have quickly gained popularity and serve as an alternative to traditional taxicab or livery services. The new companies rely, to varying degrees, on drivers who provide pre-arranged transportation services in their own private vehicles.

The City of Boston did not issue regulations specifically targeted at such companies nor did it enforce Rule 403 against them.

**B.   State Regulation of TNCs**

In July, 2016, the General Court enacted and the Governor of Massachusetts signed into law a comprehensive statute, M.G.L. ch. 159A½ ("the Act"), regulating TNCs at the state level.

The Act defines a TNC as

> a corporation, partnership, sole proprietorship or other entity that uses a digital network to connect riders to drivers to pre-arrange and provide transportation.

Id. § 1. The Act also delegates regulation of TNCs to a new state "division" within the Massachusetts Department of Public Utilities ("DPU"). Id. § 2. That division implements insurance requirements, monitors fare estimates, ensures the safety and annual inspection of TNC vehicles and monitors the accommodation of riders with special needs. Id. The division also issues permits, which must be annually renewed, to TNCs and it has the power to conduct hearings and impose penalties on TNCs which are noncompliant with the Act. Id. §§ 3, 6.

Moreover, the Act ostensibly removes TNCs from local regulation. Section 10 provides, in part:

> [N]o municipality or other local or state entity, except the Massachusetts Port Authority . . . may subject a [TNC] to the municipality's or other local or state entity's rate or other requirements . . . .

M.G.L. ch. 159A½, § 10. The Act does not, however, prevent municipalities from regulating "traffic flow and traffic patterns to ensure public safety and convenience." Id.

### C. Procedural History

In September, 2016, plaintiffs filed a five-count complaint, in which they allege violations of the Takings Clause (Count IV) and "due process/equal protection" provisions (Count V) of the United States Constitution. So-called Counts I (declaratory judgment), II (injunctive relief) and III (damages) simply describe plaintiffs' requested relief. Plaintiffs

-4-

subsequently moved for a preliminary injunction to direct defendants to suspend enforcement of M.G.L. ch. 159A½ and to regulate TNCs under the local taxicab regulations, namely Rule 403.

Defendant David M. Gibbons, the Executive Director of the Massachusetts Convention Center Authority ("MCCA") responded to plaintiffs' complaint in October, 2016, with a motion to dismiss for lack of standing and failure to state a claim.

In December, 2016, defendants 1) Governor Baker, 2) Angela M. O'Connor, Jolette A. Westbrook and Robert Hayden, representatives of the DPU and 3) Stephanie Pollack, Transportation Secretary of the Massachusetts Department of Transportation, jointly moved to dismiss plaintiffs' complaint. That same day, defendant Thomas P. Glynn, Chief Executive Officer of the Massachusetts Port Authority ("Massport") filed his own motion to dismiss plaintiffs' complaint for failure to state a claim.

Plaintiffs' motion for a preliminary injunction and defendants' motions to dismiss are the subjects of this memorandum.

## II. Motions to Dismiss

The seven named defendants filed three separate motions to dismiss primarily for failure to state claims upon which relief can be granted. Although the complaint does not specify whether

the defendants have been sued in their official or individual capacities, the parties in their briefings on the motions agree that the defendants have been sued in their official capacities. The Court will thus analyze the motions as if they were asserted by the entities that the defendants represent. See Kentucky v. Graham, 473 U.S. 159, 166 (1985).

**A.  Legal Standard**

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  A court may not disregard properly pled factual allegations even if actual proof of those facts is improbable. Id.  Rather, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents

incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

**B.   Motion to Dismiss by Defendant Glynn**

Defendant Thomas P. Glynn moves to dismiss plaintiffs' claims against Massport on the grounds that plaintiffs 1) lack standing and 2) fail to state a claim upon which relief can be granted.

To allege standing to bring a particular claim, a plaintiff must show that

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000).

Glynn correctly maintains that Massport is mentioned just once in the entire complaint when it is alleged that:

> The TNC Law allows MassPort and MCCA to establish rules to allow TNCs to pick up at both Logan Airport and the Convention Center.

That sole allegation fails, however, to support the causation requirement for standing. Plaintiffs' purported harm, the loss of exclusivity in the transport-for-hire market, is based upon the alleged unfair impact of municipal taxi

-7-

regulations now that a new state statute has been enacted to regulate TNCs, i.e. M.G.L. 159A½. Plaintiffs have thus not alleged that Massport has caused the purported harm. See Katz v. Pershing, LLC, 672 F.3d 64, 71-72 (1st Cir. 2012) ("[C]ausation is absent if the injury stems from the independent action of a third party.").

Even if that single allegation were sufficient to establish standing, it is "too meager" to support an inference that Massport is liable for any misconduct. SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (citing Twombly, 550 U.S. at 555). Plaintiffs' claims against Massport are therefore also subject to dismissal for failure to state a claim.

Accordingly, all claims against Massport will be dismissed.

### C. Motion to Dismiss by Defendant Gibbons

David M. Gibbons, Executive Director of the MCCA, moves to dismiss the complaint against the MCCA for failure to state a claim upon which relief can be granted.

Again, plaintiffs' only allegation against the MCCA is that:

> [t]he TNC Law allows MassPort and MCCA to establish rules to allow TNCs to pick up at both Logan Airport and the Convention Center.

As explained above, the crux of plaintiffs' argument is that, as a result of the enactment of M.G.L. 159A½, the distinction between in state regulation of TNCs and local

regulation of taxis has led to an alleged loss of market exclusivity. Without more, plaintiffs' lone allegation against the MCCA is not sufficient to show the MCCA had any involvement in the alleged harm to the plaintiffs.

Although in the complaint, plaintiffs also describe the history of funding for the Boston Convention and Exhibition Center ("BCEC"), which is under the direction of the MCCA, those allegations further emphasize that it is state law not the MCCA that differentiates between taxis and TNCs:

> despite being financed off the backs of taxi medallions, the TNC Law allows TNCs to provide services and pick up at the bustling BCEC.

Because plaintiffs' have not sufficiently alleged a claim against the MCCA, the Court will dismiss plaintiffs' claims against it.

### D. Motions to Dismiss by Defendants Governor Baker, Hayden, O'Connor, Pollack and Westbrook

The remaining defendants, Governor Charles Baker, Angela O'Connor, Jolette Westbrook, Robert Hayden and Stephanie Pollack (collectively, "the Commonwealth defendants") move to dismiss all plaintiffs' claims.

#### 1. Plaintiffs' Takings Claim (Count IV)

In Count IV, the first substantive claim, plaintiffs allege that the enactment of M.G.L. ch. 159A½ by the state legislature,

violates the Takings Clause because it constitutes a taking of property without the payment of just compensation.

### a. Legal standard

The Takings Clause of the Fifth Amendment of the United States Constitution prohibits the government from taking private property for public use without just compensation. Me. Educ. Ass'n Benefits Tr. v. Cioppa, 695 F.3d 145, 152 (1st Cir. 2012). The clause applies to

> not only the paradigmatic physical taking . . . but also to regulatory interferences, which transpire when some significant restriction is placed upon an owner's . . . property [use] for which fairness and justice require that compensation be given.

Id. (citation and internal quotations omitted).

### b. Application

Plaintiffs contend that they hold property rights in their medallions which provide the "exclusive means" to engage in the taxi business. By eliminating that exclusivity, plaintiffs aver, the Commonwealth took their property without paying just compensation.

Plaintiffs correctly note that the right to exclude others from one's property is "perhaps one of the most fundamental" property interests. Lingle v. Chevron U.S.A., Inc., 528, 539 (2005). Assuming, for the sake of argument, that medallions are property, by purchasing medallions plaintiffs obtained an individual right to enter the transportation-for-hire market.

Each medallion owner has the right to exclude others from using his or her medallion and the authority it confers to provide taxi services.

But the owner of a medallion does not possess a property interest in the transportation-for-hire market itself. Thus, a medallion owner has no right to exclude others from the market. This is manifest from the fact that taxi medallion owners may not exclude other taxi medallion owners from participating in the market. Nor can they exclude new medallion purchasers when cities summarily increase the number of available medallions. Similarly, the aggregation of the rights of all medallion owners is not immutable. For example, Rule 403 does not provide medallion owners with "an unalterable monopoly" over the transportation-for-hire market. Minneapolis Taxi Owners' Coal. v. City of Minneapolis, 572 F.3d 502, 508 (8th Cir. 2009).

The exclusivity of medallion owners' access to the market prior to the arrival of TNCs existed by virtue of local regulatory structures, not as a result of the medallion owners' property rights. Medallion owners have no property interest in the enforcement of local taxi regulations against others. See Town of Castle Rock v. Gonzales, 545 U.S. 748, 766 (2005).

Plaintiffs have not alleged that the Commonwealth has revoked, suspended or impeded its ability to use its medallions. Their sole claim is that the loss of market exclusivity caused

by the enactment of the new TNC statute has diminished the value of their medallions. Because plaintiffs have no rights to market exclusivity, they have failed to state a claim upon which relief can be granted. As such, the motion of the Commonwealth defendants to dismiss Count IV will be allowed.

### 2. Plaintiffs' Equal Protection Claim (Count V)

Plaintiffs allege in Count V that M.G.L. ch. 159A½ violates their equal protection rights because it regulates TNCs differently than taxis without any rational basis.

#### a. Legal standard

The Equal Protection Clause of the Fourteenth Amendment "requires that all persons similarly situated . . . be treated alike." Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 10 (1st Cir. 2013) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). Unless a fundamental right or a suspect classification is at issue,

> courts will uphold legislation that provides for differential treatment upon a mere showing of a rational relationship between the disparate treatment and a legitimate government objective.

Starlight Sugar, Inc. v. Soto, 253 F.3d 137, 145 (1st Cir. 2001) (citation omitted).

Rational basis review simply requires that there be "any reasonably conceivable set of facts" justifying the disparate

treatment. FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313-14 (1993).  Although the Commonwealth

> may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational

City of Cleburne, 473 U.S. at 446, the basis for the legislation need not be supported by evidence in the record. Beach Commc'ns, 508 U.S. at 315.

### b. Application

Plaintiffs contend that taxicabs and TNCs are similarly situated and that there is no rational basis for regulating the two groups differently.  The Commonwealth defendants respond that TNCs and taxis are not similarly situated and proffers a number of bases for the differences purportedly supporting the TNC legislation.

Even taking as true all of plaintiffs' allegations that taxicabs and TNCs are similarly situated, plaintiffs have failed to negate all of the purported bases for the enactment of M.G.L. ch. 159A½. See Beach Commc'ns, 508 U.S. at 315 (placing the burden on the plaintiffs to refute every possible legitimate basis for the subject legislation).

The Commonwealth defendants maintain that differentiating between TNCs and taxicabs is rationally related to a legitimate government interest in "fostering a diverse" transportation-for-hire market.  The Court agrees.  For example, the distinctions

in fare structure between TNCs and taxis is fairly and substantially related to the goal of providing a diverse market of transportation options. TNCs employ variable pricing which "surges," i.e., increases, during high demand, whereas taxis provide flat, metered fares. The Commonwealth defendants (or the legislature acting on their behalf) could rationally conclude that those distinctions provide individuals with an opportunity to balance price and convenience in their transportation decisions and that TNCs represent a new addition to the market to compete with taxis, livery vehicles and public transportation. See Ill. Transp. Trade Ass'n v. City of Chicago, 839 F.3d 594, 599 (7th Cir. 2016) (concluding that regulatory distinctions between taxis and TNCs are permissible to support competition in the transportation-for-hire market).

Furthermore, it is conceivable that the state legislature concluded that taxis should be subject to tighter regulation of rates to protect passengers. Unlike TNCs, which can only pickup passengers through pre-arrangement, taxis can accept street hails. As the Commonwealth defendants argued in their memorandum in support of the motion to dismiss, the consumer knows what to expect when arranging for a TNC and even has the opportunity to shop for better fares but in the case of a street hail the passenger has no information about the taxi driver and has no opportunity to negotiate the fare. Thus, the legislature

could have rationally decided to impose tighter restrictions on taxis than on TNCs. See Desoto CAB Co. v. Picker, Docket No. 15-cv-04375, 2017 WL 118810, at *7 (N.D. Cal. Jan. 12, 2017).

Finally, in the three cases of which the Court is aware that address equal protection claims similar to those here, respected jurists on the Seventh Circuit Court of Appeals, the United States District Court for the District of Columbia and the United States District Court for the Northern District of California uniformly dismissed those claims. See generally Ill. Transp. Trade Ass'n v. City of Chicago, 839 F.3d 594 (7th Cir. 2016) (reversing the district court's decision not to dismiss the equal protection claim); Desoto CAB Co. v. Picker, Docket No. 15-cv-04375, 2017 WL 118810 (N.D. Cal. Jan. 12, 2017); Gebresalassie v. District of Columbia, 170 F. Supp. 3d 52 (D.D.C. 2016). Consequently, although this Court suggested, before the enactment of M.G.L. ch. 159A½, that there was no rational basis for the City of Boston to differentiate between taxis and TNCs, current, persuasive authority, buttressed by such enactment, favors the Commonwealth defendants in this action.

Accordingly, because there is at least one rational basis that is fairly related to the disparate treatment of TNCs and taxis, the Court will dismiss Count V.

### 3. Plaintiff's remaining claims for Declaratory Relief (Count I), Injunctive Relief (Count II) and Monetary Damages (Count III)

Because the first three counts in plaintiffs' complaint merely describe the requested relief and the Court has determined to dismiss plaintiffs' underlying substantive claims, Counts I, II and III will also be dismissed.

### III. Plaintiff's Motion for a Preliminary Injunction

Plaintiffs' motion for a preliminary injunction will be denied as moot because the Court will allow defendants' separate motions to dismiss with respect to all of plaintiffs' claims.

### ORDER

For the forgoing reasons,

1) plaintiffs' motion for a preliminary injunction (Docket No. 25) is **DENIED**;

2) the motion of defendant David M. Gibbons to dismiss (Docket No. 16) is **ALLOWED**;

3) the motion of defendants Governor Charles Baker, Angela M. O'Connor, Jolette A. Westbrook, Robert Hayden and Stephanie Pollack to dismiss (Docket No. 32) is **ALLOWED**; and

4) the motion of defendant Thomas P. Glynn to dismiss (Docket No. 35) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton\_\_\_\_\_
Nathaniel M. Gorton
United States District Judge

Dated January 24, 2017